IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MISSISSIPPI BANKERS ASSOC.;**
**CONSUMER BANKERS ASSOC.;**
**AMERICAN BANKERS ASSOC.;**
**AMERICA'S CREDIT UNIONS;**
**ARVEST BANK; BANK OF FRANKLIN;**
**and THE COMMERCIAL BANK**,

*Plaintiffs*,

*v.*

**CONSUMER FINANCIAL**
**PROTECTION BUREAU and SCOTT**
**BESSENT, in his official capacity as**
**Acting Director of the Consumer**
**Financial Protection Bureau**,

*Defendants*,

*and*

**MISSISSIPPI CENTER FOR JUSTICE**
**and MYPATH**,

*Movants*.

CAUSE NO. 3:24-CV-792-CWR-LGI

**ORDER**

Before the Court is a motion to intervene filed by the Mississippi Center for Justice and MyPath. For the reasons discussed below, the motion is granted in relevant part.

**I.     Factual and Procedural History**

The Consumer Financial Protection Bureau ("CFPB") is an independent regulatory agency of the United States government. At issue in this case is one of its recent regulations: a final rule giving large banks options for managing their overdraft lending programs. *See*

Overdraft Lending: Very Large Financial Institutions, 89 Fed. Reg. 106768 (Dec. 30, 2024) (to be codified at 12 C.F.R. pts. 1105, 1026) [*hereinafter* "the Overdraft Rule"]. The Overdraft Rule is set to take effect on October 1, 2025.

In a statement issued the day of its release, the CFPB's then-Director said the Overdraft Rule would close "a legal loophole that has drained billions of dollars from Americans' deposit accounts" via "excessive junk fees." *CFPB Closes Overdraft Loophole to Save Americans Billions in Fees*, CFPB (Dec. 12, 2024), https://www.consumerfinance.gov/about-us/newsroom/cfpb-closes-overdraft-loophole-to-save-americans-billions-in-fees/ (last visited Mar. 1, 2025). The agency specifically estimated that the Overdraft Rule would save consumers up to $5 billion each year. *Id.*

The plaintiffs filed this suit the same day the Overdraft Rule was announced. They are a collection of banks and bankers' associations, both here in Mississippi and nationally, that say they will be subject to the Overdraft Rule when October arrives. The bankers claim that the Overdraft Rule violates the Administrative Procedure Act ("APA").

The bankers moved for a preliminary injunction on December 18, 2024. The parties then jointly moved for and received extensions to respond and reply to the motion.[1] The CFPB filed its response opposing a preliminary injunction on January 14, 2025. The bankers replied on January 28. The motion remains pending.

Of course, during this briefing schedule, a peaceful transition of power was effected in the Nation's Executive Branch. The CFPB's leadership changed on January 20, 2025, and in fact has changed again since then. And over the course of those changes, consumer groups

---

[1] As the motion was being briefed, the U.S. Chamber of Commerce and more than a dozen bankers' and credit unions' associations from other states chimed in to offer their support for the plaintiffs.

2

evidently feared that the CFPB would seek to jettison the Overdraft Rule, either via regulation or by a less-than-genuine defense of this action.

On February 5, 2025, therefore, the Mississippi Center for Justice and MyPath moved to intervene in this action as defendants. They are nonprofit organizations that "provide financial counseling services to individual consumers within their communities." Docket No. 61 at 10.

The very next day, the CFPB filed an agreed motion to stay this proceeding and the effective date of the Overdraft Rule. The bankers joined in that request. The Court directed the parties to fully brief intervention. Those briefs are now in.

The CFPB takes no position on the motion to intervene. The bankers, meanwhile, oppose intervention. They argue that the movants' interest in this matter is no greater than any other organization incidentally affected by the Overdraft Rule. Additionally, they suggest that the movants' presence would diminish their ability to negotiate with the CFPB and resolve this matter without consumer groups at the table.

## II.   Legal Standard

Intervention is governed by Federal Rule of Civil Procedure 24. The Rule provides two avenues for interested parties to intervene in a lawsuit: intervention as "of right," which is Rule 24(a), or "permissive intervention," which is Rule 24(b).

The Fifth Circuit has a "broad policy favoring intervention." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016). "Rule 24 is to be liberally construed," it tells us, and intervention should be allowed "where no one would be hurt and the greater justice could be attained." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (cleaned up).

Under the first avenue, Rule 24(a), the Court must permit intervention if four requirements are met:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Id.* (cleaned up).

A party that cannot satisfy this standard may nevertheless be granted permission to intervene under Rule 24(b). In resolving a motion for permissive intervention, "[f]irst, the district court must decide whether the applicant's claim or defense and the main action have a question of law or fact in common. If this threshold requirement is met, then the district court must exercise its discretion in deciding whether intervention should be allowed." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977). As before, the Court is instructed to interpret Rule 24(b)'s "claim or defense" requirement "liberally." *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975).

**III.    Discussion**

The movants seek to intervene under either Rule 24(a) or 24(b)(1)(B). Because the Court finds intervention appropriate under Rule 24(b)(1)(B), it need not address intervention under Rule 24(a). *See Wagner v. Harris Cnty. Tex.*, No. 4:23-CV-2886, 2024 WL 1639910, at *5 n.1 (S.D. Tex. Apr. 15, 2024).

The bankers do not challenge the timeliness of the movants' request to intervene, and the Court sees no undue delay in their filing. Therefore, those elements favor intervention.

4

*Accord United States ex rel Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 578 (5th Cir. 2023). The discussion, therefore, begins with assessing the movants' interests.

A successful permissive intervenor need not "have a direct or pecuniary interest in the subject of the litigation." *Howse v. S/V Canada Goose I*, 641 F.2d 317, 322 (5th Cir. 1981). A successful permissive intervenor also need not have an independent basis for standing to join a pending action. *See Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006).

"When acting on a request for permissive intervention, a district court should consider, among other factors, whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues." *League of United Latin Amer. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989). "When a proposed intervenor possesses the same ultimate objectives as an existing litigant, the intervenor's interests are presumed to be adequately represented absent a showing of adversity of interest, collusion, or nonfeasance." *Id.*

Even so, the "burden to demonstrate inadequate representation" is "minimal"; the proposed intervenor "need only show that the representation *may* be inadequate." *Wal-Mart*, 834 F.3d at 569 (cleaned up) (emphasis in original).

The thrust of this case is the bankers' desire to halt the Overdraft Rule. They argue that it is a violation of federal law. The movants, of course, seek to preserve the Overdraft Rule as consistent with federal law. Their interests relate directly to the purpose of the litigation.[2] This posture is squarely in line with the "common question of law" requirement. Fed. R. Civ. P. 24(b)(1)(B).

---

[2] The Court recognizes the bankers' reliance on *Defense Distributed v. U.S. Dep't of State*, No. 1:15-CV-372, 2018 WL 3614221 (W.D. Tex. July 27, 2018) in support of their Rule 24(a) argument. To the extent the case

Perhaps the most important aspect of today's motion, though, is the adequacy of the CFPB's anticipated defense. Had the administration and leadership of the CFPB not changed in January, the CFPB would have mounted a vigorous defense of the Overdraft Rule in this litigation. Its first brief opposing injunctive relief suggests as much. Docket No. 48.

But the situation changed. The CFPB might now seek to abandon the Overdraft Rule. Indeed, its "agreed motion to stay" suggests as much. Docket No. 63. And the CFPB's failure to take a position on intervention is telling; the agency could have used that opportunity to communicate the vigor of its anticipated defense, but elected not to. The adequacy of the CFPB's representation is therefore legitimately in question. It may fall to the movants to defend the Overdraft Rule.

That brings us to whether intervention will assist in developing the factual record. *See Clements*, 884 F.2d at 189. The bankers assert that the movants are useless here "because review is limited to the administrative record." Docket No. 73 at 21. Yet that is not an accurate statement of law. As one district court summarized last year,

> Courts may allow discovery in a case under the APA when (i) an agency fails to explain its action, effectively frustrating judicial review; (ii) the agency appears to have relied on materials not included in the record; (iii) technical terms or complex subjects need to be explained; or (iv) the plaintiff makes a strong showing of bad faith or improper behavior on the part of the agency.

*KHOLLE Magnolia 2015, LLC v. Vidal*, No. CV H-22-1974, 2024 WL 3371040, at *1 (S.D. Tex. July 9, 2024) (citation omitted); *see also Dep't of Com. v. New York*, 588 U.S. 752, 781–82 (2019).

It remains to be seen whether any discovery will be necessary in this case beyond the creation of the administrative record. Today's motion comes early in the case, since

---

is relevant to permissive intervention, it is unpersuasive here, since the movants have shown questions of law in common with the main action.

6

"intervention necessarily occurs before the litigation has been resolved." *Wal-Mart*, 834 F.3d at 569. And yet it seems undeniable that consumers groups such as the movants bring a perspective to the litigation that a large federal agency and America's banking sector either institutionally cannot or in their discretion will not. It is the voice of ordinary people. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 434-35 (2024) (critiquing agency regulations that change "year-to-year and election-to-election" as a "trap" for "ordinary people") (Gorsuch, J., concurring). And the Court believes it would be beneficial for the movants to bring that perspective to bear, even if the course of litigation later reveals no need for discovery. It is better to do so now than "decide such questions blindly." *Id.* at 402 (majority op.).

Finally, the bankers have not shown that they will be prejudiced by intervention. Surely, the bankers expected someone to defend the Overdraft Rule when they filed their suit. They are well-prepared with talented national lawyers and aligned *amici*. The case appears likely to remain an APA action. And we are at the very beginning of this litigation. For these reasons, permissive intervention is appropriate.

**IV.   Conclusion**

The motion is granted in relevant part. The Clerk's Office shall permit the movants to intervene aligned as defendants. The Intervenor-Defendants shall file their answer and respond to the pending motions within 14 days.

**SO ORDERED**, this the 4th day of March, 2025.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE